# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SHEILA J. LAWSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 15-cv-1723 (KBJ) |
| | ) |
| JEFFERSON B. SESSIONS, *U.S.* | ) |
| *Attorney General*, *et al.*, | ) |
| | ) |
| Defendants. | ) |
|  |  |

## MEMORANDUM OPINION

During the summer of 2006, pro se plaintiff Sheila Lawson resigned from the Federal Bureau of Investigation ("FBI") following a nearly 11-year tenure as a Special Agent. (First Am. Compl. ("Compl."), ECF No. 5, ¶¶ 10, 13.) Shortly after her resignation, Lawson had a change of heart, and between 2007 and 2010, she repeatedly asked to be reinstated to her former position. (*See id.* ¶¶ 18, 24, 27, 30.) The FBI denied each of Lawson's four requests for reinstatement. (*See id.* ¶¶ 20, 25, 28, 32.) In the instant lawsuit, Lawson alleges that the FBI's refusal to reinstate her as a Special Agent constitutes discrimination on the basis of her age, sex, and race, and was also retaliation for an Equal Employment Opportunity ("EEO") complaint that Lawson had filed in 2006. (*See id.* ¶ 1.) The instant complaint separately alleges that the FBI retaliated against Lawson by improperly processing another one of her EEO complaints; specifically, Lawson contends that an FBI employee interfered with the processing of an EEO complaint she filed in 2010 in order to retaliate against her for filing the 2006 EEO complaint. (*See id.* ¶¶ 106–10, 147–51.)

Notably, this legal action consists of seven separate discrimination or retaliation counts, and each of these counts has been brought under either Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (*see* Counts V–VII), or the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34 (*see* Counts I–IV). Furthermore, each count relates either to the FBI's refusal to reinstate Lawson as an SA (Counts I, II, III, V, and VI (referred to herein, collectively, as the "failure-to-hire claims")), or the alleged improper processing of Lawson's 2010 administrative complaint (Counts IV and VII (collectively, the "retaliatory interference claims")).

Before this Court at present is the motion to dismiss Lawson's complaint that the FBI, the Department of Justice ("DOJ"), Attorney General Jefferson Sessions, and FBI Director Christopher Wray (collectively, "Defendants") have filed. (*See generally* Defs.' Mot. to Dismiss ("Defs.' Mot"), ECF No. 9.)[1] Defendants argue that several of Lawson's failure-to-hire claims are unexhausted (*see id.* at 13–15), that any exhausted claims were not timely presented to this Court (*see id.* at 12–13), and that all of the claims in the complaint fail to state valid grounds for relief (*see id.* at 15–21).[2]

---

[1] Lawson's complaint actually names former Attorney General Loretta Lynch and former FBI Director James Comey as the officer defendants (*see* Compl. ¶ 1), but pursuant to Federal Rule of Civil Procedure 25(d), their respective successors in office—Attorney General Jefferson Sessions and FBI Director Christopher Wray—have since been automatically substituted as defendants. Furthermore, because "the only proper defendant in suits brought under [Title VII and the ADEA] is the head of the department or agency being sued[,]" *Wilson v. Dep't of Transp.*, 759 F. Supp. 2d 55, 67 (D.D.C. 2011); *see also* 42 U.S.C. § 2000e-16(c), it is hereby **ORDERED** that all of the defendants in this action other than Attorney General Sessions are **DISMISSED**. The proper defendant in a Title VII action filed against the FBI is the head of DOJ. *See Mulhall v. Ashcroft*, 287 F.3d 543, 550 (6th Cir. 2002) ("[I]n the present case [the plaintiff] alleges Title VII retaliation by the FBI; the FBI is a subunit of the Justice Department. Therefore, the proper defendant is the Attorney General, the head of the Justice Department."). However, for the sake of convenience, this Court will persist in using the plural term "Defendants" when referring to the movant in this Memorandum Opinion.

[2] Page-number citations to documents the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

Defendants' arguments for dismissal generally treat the discrimination and retaliation claims that Lawson brings under Title VII as largely interchangeable with those that she brings under the ADEA; however, as explained below, there are critical differences between the procedures that a plaintiff must follow with respect to exhaustion and timeliness under those two statutes. Consequently, although the Court largely agrees with Defendants' exhaustion and timeliness arguments as they apply to Lawson's Title VII failure-to-hire claims (with an exception discussed below), the Court concludes that Defendants have not demonstrated that Lawson's ADEA failure-to-hire claims are unexhausted or untimely. The Court also concludes that the ADEA failure-to-hire counts state valid claims for discrimination and retaliation, because the complaint plausibly alleges both (1) that age was a factor in the FBI's refusal to reinstate Lawson, and (2) that the FBI's refusal was causally related to an EEO complaint that Lawson previously filed in 2006. Finally, the Court concludes that Lawson's retaliatory interference claims state valid grounds for relief, because Lawson has plausibly alleged that interference in the processing of her EEO complaint was a materially adverse action of the sort that can substantiate retaliation claims under both Title VII and the ADEA.

Accordingly, Defendants' motion to dismiss will be **GRANTED IN PART AND DENIED IN PART**. Lawson's Title VII failure-to-hire claims (Counts V and VI) will be largely dismissed for failure to exhaust, while the corresponding ADEA failure-to-hire claims (Counts II and III), as well as her Title VII and ADEA retaliatory interference claims (Counts IV and VII), may proceed. With respect to the failure-to-hire allegations that Lawson makes in Count I, the Court will permit Lawson to amend

her complaint to clarify the claim, and Lawson can also amend Counts V and VI to address deficiencies in the surviving portions of those claims, as outlined below. A separate Order consistent with this Memorandum Opinion will follow.

## I.    BACKGROUND

### A.    Facts Pertaining To Lawson's Failure-To-Hire Claims[3]

Sheila Lawson is an African-American woman who began her employment as a Special Agent ("SA") with the FBI on October 15, 1995. (*See* Compl. ¶¶ 9–10.) At some unspecified point in 2006, Lawson "initiated the EEOC discrimination complaint process" (*id.* ¶ 12), and filed a formal complaint of discrimination (*see id.* ¶ 90). The exact substance of Lawson's 2006 grievance is not apparent from her complaint in the instant case, although Lawson does allege that the EEO claims were brought "against [Robert Enriquez, her former supervisor] and other FBI employees[.]" (*Id.* ¶ 107.) On July 7, 2006, after serving nearly 11 years as an SA, Lawson resigned from her position (*see id.* ¶ 13), and the following year, she withdrew the 2006 EEO complaint (*see id.* ¶ 14).

Following Lawson's resignation, the FBI Human Resources office sent Lawson an electronic communication that outlined the agency's reinstatement policy for former SAs. (*See id.* ¶ 15.) This message "stated that if an individual took a refund of the retirement contributions made to the FERS pension account, that individual is prohibited by federal law from repaying that amount to get credit for their prior service and would, therefore, be ineligible for reinstatement if they are already older than age

---

[3] The following facts are drawn from Lawson's first amended complaint. Although the complaint is at times difficult to follow, the Court believes that the following recitation accurately represents the substance of Lawson's allegations and claims.

37." (*Id.* ¶ 16 (internal quotation marks omitted).)[4]  Lawson received this message on March 20, 2007.  (*See id.* ¶¶ 15–16.)  Ten days later—on March 30, 2007—Lawson requested reinstatement as an FBI SA.  (*See* July 7, 2015 EEOC Decision ("Final EEOC Decision"), Ex. A to Compl., ECF No. 5-1, at 3.)  And five days after the reinstatement request—on April 5, 2007—Lawson "took a refund of the retirement contributions in her FERS account."  (Compl. ¶ 17.)

According to Lawson, on at least four different occasions between May 31, 2007, and March 26, 2010, the FBI denied her formal requests for reinstatement, and Lawson alleges that the FBI refused to rehire her because of her age, sex, and race, and also in retaliation for her filing of the 2006 EEO complaint.  The first denial occurred on May 31, 2007, when the Chief of Human Resources allegedly "denied [Lawson] the FBI SA position because she was 41 years old" (*id.* ¶ 20), and therefore could not accumulate 20 years of service before the FBI's mandatory-retirement age of 57 (*see id.* ¶ 22; *see also supra* note 4).  Undaunted, Lawson again requested reinstatement, and enclosed with her reinstatement request was a letter that she addressed to the Director of the FBI and that asked for an age waiver.  (*See id.* ¶ 24.)[5]  In correspondence dated September

_____

[4] The reinstatement policy provides that all reinstatement candidates must be able to complete 20 years of service by the mandatory-retirement age, which at that time was 57.  (*See* FBI Special Agent Reinstatement Policy, Ex. A to Defs.' Mot, ECF No. 9-1, at 2; Letter of May 31, 2007, Ex. C to Defs.' Mot., ECF No. 9-3, at 1.)  When making this years-of-service calculation, the agency typically credits a reinstatement applicant with her years of prior service, *unless* that "individual took a refund of the retirement contributions [she] made to FERS," in which case the reinstatement applicant is prohibited "from repaying that amount to get credit for [her] prior service[.]"  (FBI Special Agent Reinstatement Policy at 2.)  Accordingly, "if an individual took a refund of [her] retirement contributions[,]" she could not receive credit for prior years of service and would thus "be ineligible for reinstatement if [she is] already older than age 37."  (*Id.*)  The Court includes this information, which is contained in exhibits to Defendants' motion, to provide additional context for its explanation of the facts at issue, and has not otherwise relied upon Defendants' exhibits in resolving the instant motion to dismiss.

[5] Pursuant to "Human Resources Order–DOJ 1200.1[,]" age waivers are available to individuals who otherwise exceed the maximum permissible age for reinstatement in cases involving "especially qualified individuals; shortage of highly qualified individuals for specific law enforcement positions[;]

2, 2008, the FBI again denied Lawson's request, explaining that "the FBI Director could give 'no further consideration' because the FBI Director could only grant age waivers up to age 60" (*id.* ¶ 25), and as a 41-year-old requester, Lawson could not accumulate 20 years of service before that cutoff.

Lawson subsequently submitted two more reconsideration requests, both of which the agency swiftly denied in a letter dated January 7, 2009. (*See id.* ¶¶ 27–28.) In this denial letter—the agency's third in less than two years—the agency purportedly advised Lawson "that she had 'reached the age' where she could no longer be reinstated in the FBI SA position" (*id.* ¶ 28), and further instructed her to direct age waiver requests to the Attorney General (*see id.* ¶ 29). Lawson followed this instruction approximately four months later by sending "a letter to Attorney General Eric H. Holder, Jr. requesting a decision regarding her application for reinstatement in the FBI SA position." (*Id.* ¶ 30.) This request was subsequently forwarded to the FBI's Human Resources office, and in a letter dated March 26, 2010, the agency, for the fourth time, declined to reinstate Lawson. (*See id.* ¶¶ 31–32.)

## B. Facts Pertaining To Lawson's Retaliatory Interference Claims

At some point in 2010, Lawson "contacted an EEO counselor" and "initiated the informal discrimination complaint counseling phase[.]" (*Id.* ¶ 106.) On July 10, 2010, Lawson filed a formal complaint with the EEOC in which she claimed that the FBI had discriminated against her on the basis of sex and age, and had retaliated against her for

_____

. . . [and] situations where tentative selectees for law enforcement positions have passed the maximum entry age due to unavoidable or unexpectedly lengthy clearance or processing requirements[.]" (Compl. ¶ 37 (internal quotation marks omitted) (quoting HR Order–DOJ 100.1, Chap. 1–6, Maximum Entry Age And Mandatory Retirement of Law Enforcement Officers, found at https://www.justice.gov/jmd/hr-order-doj12001-part-1-employment-1).)

prior protected activity, when it refused to grant her reinstatement requests between May 23, 2007 and March 26, 2010. (*See* Final EEOC Decision at 1.) Lawson alleges that while she was "participat[ing] in the EEOC formal discrimination complaint process[,]" Robert Enriquez—Lawson's former FBI Unit Chief, "who knew [Lawson had] filed a prior discrimination complaint against him in 2006" (Compl. ¶ 48)—got involved with Lawson's EEO case and purportedly "interfered" with her administrative complaint "through improper complaint processing, an incomplete investigation of Plaintiff's claims of discrimination, and the omission of any investigation of Plaintiff's claims of retaliation." (*Id.* ¶ 49; *see also id.* ¶ 48.) Enriquez's actions allegedly prompted Lawson to file "a spin-off EEOC complaint" regarding Enriquez's conduct during the administrative proceedings for Lawson's July 2010 complaint. (*Id.* ¶ 50.) The instant complaint provides no additional details regarding the timing, content, or disposition of Lawson's "spin-off" administrative complaint.

On July 7, 2015, the EEOC issued its final decision dismissing Lawson's July 2010 complaint. (*See generally* Final EEOC Decision.) At the end of its decision letter, the Commission informed Lawson that she had the right to file a civil action in federal court "within ninety (90) calendar days from the date that" she received its decision, and further explained that, "[f]or timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed." (*Id.* at 6, 8.)

### C. Procedural History

Lawson initiated the instant lawsuit on October 19, 2015—104 days after the EEOC issued its decision of July 7, 2015. Lawson subsequently filed an amended

complaint, which is the current operative complaint in this matter, asserting seven separate causes of action that, as explained above, arise from two distinct categories of acts.  (*See generally* Compl.)

The claims in the first category, which this Court calls the "failure-to-hire claims," challenge the FBI's repeated refusal to reinstate Lawson as an SA.  Lawson alleges that the agency's four denial letters constitute disparate treatment due to age, race, and sex under the ADEA (Count II) and Title VII (Count V), respectively (*see id.* ¶¶ 71–85, 116–27), and Lawson also contends that the agency refused to reinstate her on these occasions in retaliation for her prior EEO activity, in violation of the ADEA (Count III) and Title VII (Count VI) (*see id.* ¶¶ 86–99, 128–40).  Lawson's first failure-to-hire claim (Count I) is more difficult to characterize.  This cause of action—which is brought under the ADEA and is captioned, "Unlawful Discrimination Because of Age in FBI Reinstatement Policy"—at times appears to challenge the FBI's reinstatement policy as facially discriminatory (*see id.* ¶ 67 ("The hiring policy . . . unlawfully excluded Plaintiff because of age.")), and at other times appears to raise a disparate treatment claim (*see id.* ¶ 65 (alleging that the "discriminatory age-based policy was not applied to every over age 37 reinstatement applicant who depleted the FERS pension account but was applied to disadvantage Plaintiff because of her age")).

The second category of claims in Lawson's complaint, which the Court refers to as the "retaliatory interference claims," challenges Enriquez's purported interference with, and improper processing of, Lawson's EEO complaint.  (*See id.* ¶¶ 100–15, 141–55.)  The complaint contends that Enriquez's conduct amounted to retaliation in violation of the ADEA (Count IV) and Title VII (Count VII).

On June 15, 2016, Defendants filed a motion to dismiss Lawson's complaint. (*See generally* Defs.' Mot.)  Largely without differentiating between Lawson's various claims and the asserted legal bases for them, Defendants argue that Lawson's "case" should be dismissed as untimely because Lawson filed the complaint more than 90 days after receiving her EEOC right-to-sue letter (*see id.* at 12–13), and because Lawson failed to exhaust any claims that are based on acts that occurred prior to November 17, 2009 (*see id.* at 15).  Defendants also contend that none of Lawson's disparate treatment or retaliation allegations state a valid claim for discrimination or retaliation in violation of Title VII or the ADEA.  (*See id.* at 15–21.)  For her part, Lawson responds that she timely filed her complaint within 90 days of receiving the right-to-sue letter (*see* Pl.'s Suppl. Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 15-1, at 10–12), and Lawson also insists that she has exhausted all available administrative remedies (*see id.* at 13–14).[6]  Lawson further maintains that the complaint adequately alleges discriminatory treatment and retaliation in violation of the law.  (*See id.* at 14–23.)

Defendants' motion to dismiss is now ripe for this Court's review.  (*See* Defs.' Mot; Pl.'s Opp'n; Defs.' Reply in Supp. of Defs.' Mot. to Dismiss ("Defs.' Reply"), ECF No. 16.)

---

[6] Lawson filed an initial brief in opposition to Defendants' motion on July 15, 2016 (*see* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 13), and thereafter sought, and received, leave to file a supplemental opposition brief (*see* Pl.'s Mot. for Leave to File Suppl. Mem. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 15; Min. Order of Aug. 1, 2016).  Because the supplemental memorandum that Lawson has filed effectively supplants, rather than supplements, her initial opposition brief, this Court will refer exclusively to the 'supplemental' memorandum when recounting Lawson's arguments.

## II.    LEGAL STANDARD

A motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of the complaint on its face, testing whether the pleading "state[s] a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  Although a complaint does not require detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[M]ere conclusory statements" are not enough to make out a cause of action against a defendant, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); instead, the facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.  "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice."  *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

Of course, this Court is mindful that Lawson is proceeding in this matter pro se, and that the pleadings of pro se parties are to be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers[.]"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "This benefit is not, however, a license to ignore the Federal Rules of Civil Procedure[,]" *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009), and "even a pro se plaintiff must meet his burden of stating a claim for relief[,]" *Horsey v. Dep't of State*, 170 F. Supp. 3d 256, 263–64 (D.D.C. 2016).

## III.   ANALYSIS

As explained above, Lawson's complaint raises seven causes of action that arise from two distinct categories of acts.  First, Lawson's failure-to-hire claims challenge the FBI's repeated refusals to reinstate her as an SA, on the grounds that these refusals constitute discrimination and retaliation in violation of Title VII (Counts V, VI) and the ADEA (Counts I, II, III).  By contrast, Lawson's second group of claims challenges the agency's interference with, and improper processing of, her EEO complaint, which, Lawson contends, amounts to retaliation in violation of Title VII (Count VII) and the ADEA (Count IV).  This parsing of the claims is important because, for the reasons set forth below, the Court concludes that Lawson's failure-to-hire claims brought pursuant to Title VII must be dismissed in part for failure to exhaust, while those brought under the ADEA either suffice to state a claim or may be amended to clarify Lawson's theory of liability.  The Court further finds that Lawson's retaliatory interference claims survive Defendants' motion to dismiss.

### A.      Lawson's Title VII Failure-To-Hire Claims Must Be Largely Dismissed

Although Defendants conflate the failure-to-hire claims that Lawson has brought under Title VII with the similar claims that she has brought under the ADEA (*see* Defs.' Mot. at 12–15), the exhaustion and timeliness "rules relating to Title VII and ADEA claims . . . are not identical[,]" *Achagzai v. Broad. Bd. of Govs.*, 170 F. Supp. 3d 164, 171 (D.D.C. 2016), and as a result, the two causes of action must be analyzed separately.  So analyzed, it is clear from the face of Lawson's complaint that she failed to exhaust three of the four discrete acts that form the basis of her Title VII failure-to-hire claims (with respect to the fourth act, this Court will give Lawson permission to

amend her complaint to address the deficiencies that Defendants have identified). With respect to Lawson's corresponding ADEA claims, the Court concludes that there is no exhaustion problem and that Lawson has alleged sufficient facts to support the age discrimination and retaliation claims stemming from the FBI's refusal to reinstate her. The Court will also allow Lawson to amend her complaint to clarify the ADEA claim she intends to raise in Count I.

      1. <u>The Failure-To-Hire Claims That Arise Under Title VII Must Be Dismissed For Failure To Exhaust Administrative Remedies With Respect To Three Out Of The Four Denial Letters Upon Which Those Claims Are Based, But Lawson May Amend Her Complaint With Respect To The Fourth Letter</u>

Lawson's Title VII failure-to-hire claims (Counts V and VI) arise out of the FBI's refusal on four separate occasions (May 31, 2007; September 2, 2008; January 7, 2009; and March 26, 2010) to reinstate Lawson as an FBI SA. As noted, Lawson contends that these denials constitute disparate treatment based on her sex and race, and in addition, that the FBI issued these denials in retaliation for her 2006 EEOC complaint. It is well established that, if Lawson is correct that the FBI's denials were discriminatory, each refusal is treated as a *separate* discriminatory act for purposes of Title VII's exhaustion requirements. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."). For the reasons that follow, this Court finds that, with respect to the first three denial letters from the FBI, it is clear from the face of Lawson's complaint that she did not contact an EEO counselor within 45 days of these purported violations, and as a result, failed to exhaust her administrative remedies in regard to those discrimination claims.

"Before a federal employee can file suit against a federal agency for violation of Title VII, the employee must run a gauntlet of agency procedures and deadlines to administratively exhaust his or her claims." *Crawford v. Duke*, 867 F.3d 103, 105 (D.C. Cir. 2017). First, an employee must contact the agency's Equal Employment Opportunity ("EEO") counselor to initiate informal counseling "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved informally within 30 days, the employee then has 15 days to file a formal complaint with the agency. *See id.* §§ 1614.105(d), 1614.106(a). Once an employee has filed a formal complaint, the agency must "conduct an impartial and appropriate investigation of the complaint within 180 days" of that filing, *id.* § 1614.106(e)(2), and the employee may subsequently file suit in federal district court, but must do so within 90 days of receipt of the agency's final determination, or if the agency does not take final action, after 180 days have elapsed since the filing of the complaint with the agency, *see* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(c).

"[T]he administrative time limits . . . erect no jurisdictional bars to bringing suit[,]" *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); instead, these requirements function like statutes of limitations, and as such, are subject to waiver, estoppel, and equitable tolling, *see Horsey*, 170 F. Supp. 3d at 264–65; *see also Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003) (reiterating that "the timeliness and exhaustion requirements of § 633a(d) are subject to equitable defenses and are in that sense non-jurisdictional"). However, in order to receive the benefit of equitable tolling, a tardy plaintiff must show "(1) that [s]he has been pursuing h[er] rights diligently, and

(2) that some extraordinary circumstance stood in h[er] way and prevented timely filing[.]" *Horsey*, 170 F. Supp. 3d at 267 (internal quotation marks and citation omitted). The Supreme Court has suggested that equitable tolling might be available where a claimant "received inadequate notice," where "a motion for appointment of counsel is pending[,]" or "where the court has led the plaintiff to believe that she had done everything required of her[.]" *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (per curiam).

In the instant case, it is evident on the face of Lawson's complaint that she did not exhaust administrative remedies with respect to the first three denial letters and that no grounds for equitable tolling exist. Lawson's complaint alleges that the agency denied her requests for reinstatement by issuing letters dated May 31, 2007; September 2, 2008; January 7, 2009; and March 26, 2010 (*see* Compl. ¶¶ 20, 25, 28, 32), and that she initiated contact with an EEO counselor at some unspecified time in 2010 (*see id.* ¶ 106). While it is possible that Lawson's 2010 EEO contact occurred within 45 days of the March 26, 2010 letter, the same cannot be said with respect to the first three denial letters. That is, even assuming that Lawson initiated contact with the EEO counselor at the earliest possible time in 2010 with respect to the 2007, 2008, and 2009 denial letters (i.e., on January 1, 2010), this contact occurred 946 days after the May 31, 2007 letter, 486 days after the September 2, 2008 letter, and 359 days after the January 7, 2009 letter, respectively—far beyond the applicable 45-day reporting period. Therefore, it is clear on the face of Lawson's complaint that she did not timely contact an EEO counselor with respect to the first three denial letters.

Nor has Lawson established that this is one of the "extraordinary and carefully circumscribed instances" in which equitable tolling is warranted. *Washington v. WMATA*, 160 F.3d 750, 753 (D.C. Cir. 1998) (internal quotation marks and citation omitted). Lawson suggests that tolling is justified simply and solely because she "could not have known about the discrimination or retaliation upon receipt of a letter at issue[.]" (Pl.'s Opp'n at 13–14.) Critically, however, Lawson fails to articulate precisely *why* she could not possibly have known that the denial letters were discriminatory and retaliatory when she received them, and her contention in this regard is particularly odd given that her current discrimination and retaliation claims appear to rest solely upon the FBI's issuance of these same letters. What is more, because the denial letters at issue are dated between one and three years before Lawson initiated contact with an EEO counselor (again, construing Lawson's "2010" contact with an EEO counselor as having occurred on January 1, 2010 (Compl. ¶ 106)), Lawson has failed to demonstrate diligence in pursuing her administrative remedies by any stretch of the imagination. *See Washington*, 160 F.3d at 753 (finding that a complainant's lack of diligence precluded equitable tolling where the complainant filed an EEOC complaint "over a year" (13 months) after the alleged act of discrimination, in violation of an 180-day filing deadline); *Dyson v. District of Columbia*, 710 F.3d 415, 421–22 (D.C. Cir. 2013) (finding that a complainant's lack of diligence precluded equitable tolling where the complainant missed a filing deadline by 38 days due to circumstances that were within her control). In the absence of any evidence that Lawson exercised the requisite due diligence in pursuing her administrative remedies, or that some

extraordinary circumstances impeded Lawson's ability to pursue those rights, this Court declines to toll the 45-day reporting deadline.

In a final effort to avoid the dismissal of her Title VII failure-to-hire claims, Lawson argues that all four denial letters at issue constitute one continuous discriminatory and retaliatory action. (*See* Pl.'s Opp'n at 13 ("These letters mailed to Plaintiff from the FBI Human Resources Division continually provided reasons that denied Plaintiff's reinstatement in the FBI SA position.").) As this Court has already explained, however, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are" acts that occur at a fixed time, and thus an employee must adhere to the established administrative process for *each* discrete action for which she seeks to bring a claim. *Morgan*, 536 U.S. at 114; *see also id.* at 113; *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 172 (D.D.C. 2012) ("[S]ince the Supreme Court's decision in *Morgan*, the continuing violation theory is restricted to claims akin to hostile work environment claims because those violations—unlike a discrete act such as firing or failing to promote an employee—cannot be said to occur on any particular day." (internal quotation marks and citation omitted)).

Therefore, the Court rejects Lawson's argument that her claims are exhausted with respect to all four denial letters because they constitute a continuous discriminatory or retaliatory event, and the Court also finds it apparent from the face of Lawson's complaint that she failed to contact an EEO counselor within 45 days of the May 31, 2007, September 2, 2008, and January 7, 2009 denial letters. Thus, the Title VII discrimination and retaliation claims that arise from these denial letters must be dismissed. *See Fortune v. Holder*, 767 F. Supp. 2d 116, 122–23 (D.D.C. 2011)

(collecting cases in which courts dismissed Title VII claims on exhaustion grounds where it was clear that the complainant had not contacted an EEO counselor within 45 days of the alleged act of discrimination).  Lawson's Title VII failure-to-hire claims that stem from the denial letter of March 26, 2010, will not be dismissed on exhaustion grounds, because at this juncture, Defendants cannot demonstrate that Lawson failed to contact an EEO counselor within 45 days of that letter, as Defendants themselves concede.  (*See* Defs.' Mot. at 15.)

Defendants do *not* concede that any exhausted claims were timely presented to this Court.  In this regard, Lawson has requested the opportunity to amend the complaint "to reflect the date of receipt of the [right-to-sue letter] should the Court hold in abeyance a decision in regard to this issue" (Pl.'s Opp'n at 12), which this Court has hereby decided to allow (*see* the accompanying Order).  With this opportunity to amend her complaint, Lawson will also have a chance to add any additional allegations of fact that pertain to the March 26, 2010, denial letter—which is the sole remaining basis for her Title VII failure-to-hire claims (Counts V, VI)—before the Court considers Defendants' arguments regarding the sufficiency of the factual allegations in support of these claims.  Once Lawson files the anticipated amended complaint, the Court will permit Defendants to file a partial motion to dismiss that addresses the Title VII failure-to-hire claims arising out of the denial letter of March 26, 2010.

2.    Lawson's Failure-To-Hire Claims Survive The Motion To Dismiss To The Extent That They Arise Under The ADEA

In their motion to dismiss, Defendants insist that the failure-to-hire claims that Lawson has brought under the ADEA (Counts I, II, and III) suffer from the same fundamental flaws as her Title VII claims—namely, that these claims are both

unexhausted and untimely.  (*See* Defs.' Mot. at 12−15.)  In the alternative, Defendants

argue that Lawson's complaint fails to state any claim for discrimination or retaliation

under the ADEA.  (*See id.* at 15−20.)  For the reasons set forth below, this Court

disagrees on both fronts.

> a.  *Defendants Have Not Demonstrated That Lawson's Age*
> *Discrimination And Retaliation Claims Must Be Dismissed On*
> *Exhaustion Or Timeliness Grounds*

Although Lawson's ADEA failure-to-hire claims arise from the same set of

underlying facts as the corresponding claims that Lawson has brought under Title VII,

the pre-filing procedures that apply under these two statutes are analytically distinct.

Stated simply, Title VII requires a plaintiff to navigate a "maze of administrative

processes[,]" *Niskey v. Kelly*, 859 F.3d 1, 5 (D.C. Cir. 2017), while an ADEA plaintiff

has a much easier row to hoe when filing a discrimination action, *see Chennareddy v.*

*Bowsher*, 935 F.2d 315, 318 (D.C. Cir. 1991).  This is because "[a]n ADEA plaintiff has

two means of pursuing his age discrimination claim."  *Id.*  First, a federal employee has

the option of bypassing the administrative process altogether and suing directly in

federal court, subject to certain notice requirements.  *See* 29 U.S.C. § 633a(d).

However, an employee who selects this option must give notice of the lawsuit to the

EEOC "within one hundred and eighty days after the alleged unlawful practice

occurred" and "not less than thirty days[]" prior to the commencement of the action.

*Id.*; *see also Stevens v. Dep't of the Treasury*, 500 U.S. 1, 6−7 (1991) (clarifying that a

plaintiff is required to file her *notice*—not the civil action itself—within 180 days of

the conduct at issue and at least 30 days prior to the commencement of suit, and

indicating that a plaintiff may wait considerably more than 30 days after filing her

notice of intent to sue before filing her lawsuit). Alternatively, an ADEA plaintiff "may [opt to] invoke the EEOC's administrative process, and then sue if dissatisfied with the results." *Rann*, 346 F.3d at 195 (citing 29 U.S.C. § 633a(b), (c)).

In the instant case, Defendants do not address whether Lawson actually provided the EEOC with the requisite notice before seeking to obtain direct judicial review of her ADEA claims in this Court, as would be required under the first of these two avenues. Instead, Defendants frame their exhaustion and timeliness arguments solely in terms of the deadlines applicable within the context of the EEOC administrative process, and they note in passing that Lawson's complaint "does not allege that Lawson relied on any avenue other than the FBI's administrative avenue for exhaustion of her alleged ADEA claims." (Defs.' Mot. at 14.) But the burden of establishing exhaustion does not lie with the plaintiff. That is, while it is true that Lawson's complaint does not allege that she provided an intent-to-sue notice to the EEOC within 180 days of the alleged discriminatory acts, or that she waited at least 30 days after doing so to commence suit, "untimely exhaustion of administrative remedies is an affirmative defense," and thus "*the defendant* bears the burden of pleading and proving it[.]" *Bowden*, 106 F.3d at 437 (emphasis added). Thus, at this early stage of the instant litigation, dismissal of the action is only appropriate if the plaintiff's failure to comply with established procedural prerequisites is evident on the face of the complaint. *See Horsey*, 170 F. Supp. 3d at 265. In any event, Defendants here have not meaningfully addressed the separate ADEA framework or the facts in the complaint that implicate it (if any); therefore, they have not carried their burden of proving the lack of exhaustion or the untimeliness of Lawson's complaint for the purpose of supporting their motion to dismiss.

It is also the case that, even if one accepts as true Defendants' suggestion that Lawson's complaint demonstrates that she sought to invoke the second path to judicial review (i.e., that she sued after filing an EEO complaint regarding her ADEA claims), Defendants do not automatically prevail with respect to their argument that these claims are unexhausted and/or untimely. The D.C. Circuit has expressly avoided deciding whether, having filed an EEOC complaint, an ADEA plaintiff "must reasonably *pursue* the process, as an exhaustion requirement would ordinarily entail." *Rann*, 346 F.3d at 195 (emphasis in original); *see also id.* (remarking that the ADEA is silent on this question). The Supreme Court has similarly declined to reach the issue of whether an ADEA plaintiff like Lawson is required to press on with respect to any EEO complaint she has filed and avail herself of all potential administrative remedies before bringing a lawsuit. *See Stevens*, 500 U.S. at 9–10 (1991) (explaining that this issue was not properly before the Court in light of the Solicitor General's position that "a federal employee who elects agency review of an age discrimination claim need not exhaust his administrative remedies").

In the absence of any argument from Defendants regarding these significant open legal questions—or, for that matter, any argument tailored to the ADEA framework as opposed to the procedures that Title VII prescribes—this Court declines, at this time, to dismiss Lawson's ADEA claims as unexhausted or untimely. Defendants are, of course, free to reassert these defenses (along with the appropriate legal and factual support) at a later stage in this case.

b. *Defendants Have Not Demonstrated That Lawson's Age Discrimination And Retaliation Claims Must Be Dismissed For Failure To State A Claim*

Defendants have also argued, as an alternative to the untimeliness and exhaustion contentions, that each of Lawson's ADEA failure-to-hire claims fails to state a claim upon which relief can be granted. (*See* Defs.' Mot. at 15–20.) For the reasons explained below, this Court disagrees with Defendants' view of Lawson's failure-to-hire claims that allege discrimination (Count II) and retaliation (Count III) in violation of the ADEA, and it will allow Lawson to amend the complaint to clarify the basis for the ADEA failure-to-hire claim that is set forth in Count I.

(i) Lawson has stated a discrimination claim under the ADEA because she has alleged sufficient facts to support the inference that age was a factor in defendants' refusals to reinstate her.

The ADEA requires that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . be made free from any discrimination based on age." 29 U.S.C. § 633a(a). "The Act's protections for employees of the federal government" are "more expansive than those for workers employed in the private sector," *Miller v. Clinton*, 687 F.3d 1332, 1336–37 (D.C. Cir. 2012); that is, while a private sector employee must "show that the challenged personnel action was taken *because* of age," a federal employee can prevail by "show[ing] that the personnel action involved '*any* discrimination based on age[,]'" *Ford v. Mabus*, 629 F.3d 198, 205 (D.C. Cir. 2010) (quoting 29 U.S.C. § 633a) (emphasis added). Accordingly, a federal employee alleging age discrimination must demonstrate "that age was *a* factor in the challenged personnel action." *Ford*, 629 F.3d at 206 (emphasis in original). "[A]t the motion-to-dismiss stage, the guiding lodestar is

whether, assuming the truth of the factual allegations, . . . the inferences of

discrimination drawn by the plaintiff"—i.e., that age was a factor in the challenged

decision—"are reasonable and plausibly supported." *Townsend v. United States*, 236 F.

Supp. 3d 280, 298 (D.D.C. 2017).[7]

Notwithstanding Defendants' arguments to the contrary, Lawson's complaint

alleges sufficient facts, accepted as true, to state a plausible claim for age

discrimination based on a failure to hire in Count II. Lawson identifies herself as an

"applicant" to the federal government who "is at least 40 years of age" (Compl. ¶ 4);

hence, she is part of the class that the ADEA protects, *see* 29 U.S.C. § 633a(a).

Moreover, according to her complaint, Lawson previously served for over a decade as

an FBI special agent (*see* Compl. ¶¶ 10, 13), and was thus "qualified for the FBI SA

position" to which she applied (*id.* ¶ 19). Despite her record of service and other

qualifications, the FBI allegedly denied Lawson's applications for reinstatement on four

separate occasions between May 31, 2007 and March 26, 2010. (*See id.* ¶¶ 20, 25, 28,

32.) And in lieu of reinstating Lawson, "between October 2009 and June 2010[,]" the

FBI purportedly "hired seven applicants who sought reinstatement in the FBI SA

---

[7] To be sure, in order to be entitled to judgment on her failure-to-hire age discrimination claims ultimately, Lawson might need to resort to the familiar three-part burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973), which requires, among other things, that a plaintiff establish a *prima facie* case of discrimination. *See id.* at 802–05; *see also Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1155 (D.C. Cir. 2004) (listing elements to establish a *prima facie* case of discrimination for failure to hire). But "an employment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss[.]" *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)); *see also Swierkiewicz*, 534 U.S. at 511, 515 (holding that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case" and "the Federal Rules do not contain a heightened pleading standard for employment discrimination suits"); *Brown v. Sessoms*, 774 F.3d 1016, 1022–1023 (D.C. Cir. 2014) ("We have been clear, however, that '[a]t the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case.'" (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008))).

position[,]" all of whom "were age 39 and younger[,]" and several of whom did not possess "a unique or special skill, or ability." (*Id.* ¶¶ 39–41.) Lawson's complaint further alleges that, in a denial "letter dated January 7, 2009, [Unit Chief] Carrico advised [Lawson] that she had 'reached the age' where she could no longer be reinstated in the FBI SA position." (*Id.* ¶ 28.) This Court agrees with Lawson's contention that these facts together are more than sufficient to support a reasonable inference that she "applied for and was not hired for the FBI SA position because of her age" in violation of the ADEA. (*Id.* ¶ 84.)

Defendants' response is to insist that Lawson's complaint "fails to state any disparate treatment claim because it does not show that the FBI treated Lawson's request for reinstatement differently *because of* her age[.]" (Defs.' Mot. at 17.) This is so, Defendants argue, because under the FBI reinstatement policy as described in Lawson's own complaint, "Lawson's withdrawal from her FERS [retirement] account *automatically* disqualified her from reinstatement." (*Id.* (emphasis in original).) Thus, say Defendants, it was Lawson's retirement account withdrawal, and *not* her age, that was the true cause for the FBI's refusals to re-hire her. What Defendants overlook is the fact that the allegations in Lawson's complaint do not preclude a jury finding that age was "a" factor in the FBI's proffered rationale for refusing to reinstate Lawson, which is all that is required for ADEA claims against federal government employers. *See Ford*, 629 F.3d at 206.

Specifically, as alleged in the complaint, Lawson was told that the FBI's policy regarding FERS withdrawals and reinstatements *turns* on the age of the former agent. (*See* Compl. ¶¶ 21–22 (asserting that the unit chief of the FBI's Human Resources

Division told her that "a federal law prohibited [her] from repaying [the FERS] amount" that she had been paid; that "she could not be credited with her prior law enforcement service years" for retirement purposes; and that due to her age, she "could not earn twenty years of federal law enforcement service credit by the mandatory separation age of '57'".) In addition, Lawson's complaint plainly alleges that the FBI "denied [Lawson] the FBI SA position because she was 41 years old." (*Id.* ¶ 20; *see also id.* ¶¶ 16, 28, 34.) Therefore, in contending that Lawson's complaint does not plausibly allege that the FBI rejected her reinstatement because of her age (*see* Defs.' Mot. at 17–18), Defendants refuse to acknowledge the plain text of the very pleading that they purportedly analyze.

This is not to suggest that Lawson's complaint is a model of clarity. The complaint does contain factual allegations that, if true, tend to indicate that Defendants decided to forego reinstating Lawson because she had withdrawn money from her FERS account or because of other reasons that do not relate to discrimination on account of her age (*see, e.g.*, Compl. ¶ 21 (discussing Lawson's withdrawal from her FERS account)), and it is true that, "[i]n some cases, it is possible for a plaintiff to plead too much; that is, to plead himself out of court by alleging facts that render success on the merits impossible[,]" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000). But this Court's "role is not to speculate about which factual allegations are likely to be proved after discovery"; instead, "the only question . . . is whether [Lawson has] alleged facts that, taken as true, render [her] claim of [discrimination] plausible." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015). For the reasons explained above, Lawson needs only to include facts that demonstrate that her age was

one factor in the FBI's decisionmaking process, *see Ford*, 629 F.3d at 206, and in this regard, this Court finds that she has "nudged [her] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570.[8]

        (ii)  Lawson has stated a retaliation claim under the ADEA because she has adequately alleged that defendants failed to rehire her because she engaged in a protected activity.

   Defendants next insist that Lawson's complaint fails to state a valid retaliation claim under the ADEA (Count III) "because it fails to show the requisite causal link between Lawson's prior protected activity and the FBI's denial of her reinstatement request." (Defs.' Mot. at 19.) This argument presents a closer question than Defendants' contentions with respect to Lawson's ADEA discrimination claim, but after careful consideration of this contention, this Court concludes that Lawson has alleged a sufficient causal connection between the FBI's refusals to reinstate her and her 2006–2007 EEO activity.

   The ADEA prohibits an employer from retaliating against a federal-sector employee because the employee engaged in protected activity by opposing unlawful employment practices or bringing prior charges of age discrimination. *See Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008). "In the absence of direct evidence of retaliatory intent, to succeed on a claim for retaliation under . . . the ADEA, [Lawson]

---

[8] Defendants' contentions that Lawson's complaint references an improper "comparator" with respect to the ADEA discrimination claims (*see* Defs.' Mot. at 17 (arguing that Lawson's "alleged comparator is not a proper comparator")) and that that 36 of the 37 employees who were reinstated from 2001 to 2010 "did not take a refund from their FERS pension fund" (*id.* (internal quotation marks and citation omitted))—even if true—do not demand a different result. The pleading standard at this stage is not "onerous[,]" *McManus v. Kelly*, No. 14-1977, 2017 WL 1208395, at *5 (D.D.C. Mar. 31, 2017), and while "[a]llegations regarding comparators . . . obviously strengthen a discrimination complaint," this evidentiary requirement is "inapplicable at the pleading stage." *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017).

must show that [she] '1) engaged in a statutorily protected activity; 2) suffered a materially adverse action by [her] employer; and that 3) a causal connection existed between the two.'" *Townsend*, 236 F. Supp. 3d at 315 (quoting *Nurriddin v. Bolden*, 818 F.3d 751, 758 n.6 (D.C. Cir. 2016)). Notably, the requisite causal relationship may be inferred through temporal proximity between the protected act and the adverse employment action. *See id.* at 316. However, where causation is predicated on temporal proximity alone, "the proximity in time must be very close." *Kwon v. Billington*, 370 F. Supp. 2d 177, 187 (D.D.C. 2005) (internal quotation marks and citation omitted); *see also Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015) ("When relying on temporal proximity alone to demonstrate causation, there is no bright-line rule, although three months is perceived as the outer limit." (citation omitted)). Nevertheless, "[a] large gap between protected activity and retaliation is not necessarily fatal to a claim when the plaintiff can point to other factors leading to an inference of causation." *Greer*, 113 F. Supp. 3d at 311 (citation omitted).

In the instant case, Lawson alleges that she participated in the informal and formal EEO complaint process throughout 2006 and 2007, and thereafter, the FBI repeatedly denied her requests for reinstatement. (*See* Compl. ¶¶ 90, 94–96.) Defendants do not dispute that the FBI's refusal to hire Lawson is a materially adverse action, nor do they dispute that Lawson's prior EEO participation constitutes a protected activity. Thus, the only pertinent disputed issue is whether Lawson's complaint alleges sufficient facts related to the causation element to render her claim plausible. This Court concludes that it does, for at least two reasons.

First of all, there is some temporal proximity between Lawson's alleged protected activity and the FBI's decision not to reinstate her.  According to the complaint, Lawson "contacted an EEO counselor, initiated the informal discrimination complaint counseling phase, and participated in the formal discrimination complaint process" in "2006–2007[.]"  (*Id.* ¶ 90.)  After resigning from her position in July 2006, and withdrawing her pending EEO complaint at some point in 2007 (*see id.* ¶¶ 13–14), Lawson requested reinstatement (*see id.* ¶¶ 31, 93).  Lawson alleges that, at the time she requested reinstatement, human resources personnel "knew of [her] prior protected EEO activity in 2006–2007" (*id.* ¶ 93), and conducted "routine EEO database check[s] to determine whether an applicant for the FBI SA position had prior EEO activity involving the FBI" (*id.* ¶ 92).  The complaint says that, although Lawson "qualified for the FBI SA position" (*id.* ¶ 91), the FBI denied her requests for reinstatement in letters dated May 31, 2007, September 2, 2008, January 7, 2009, and March 26, 2010 (*see id.* ¶¶ 20, 25, 28, 32), and that a "causal connection" exists between her 2006–2007 protected activity and the denial letters "based on the close timing between" the two. (*id.* ¶ 96.)

This Court finds that temporal proximity between the administrative processes related to Lawson's 2006 EEOC complaint and the FBI's May 31, 2007 denial letter are sufficiently close to support the causal inference.  In particular, the complaint alleges that Lawson "initiated the EEOC discrimination complaint process" at some point in 2006 (*id.* ¶ 12), and that she continued to participate in this process through an unspecified period in 2007 (*id.* ¶ 90).  "[D]raw[ing] all inferences in [Lawson's] favor[,]" *Brown*, 774 F.3d at 1020 (internal quotation marks and citation omitted), the

Court will construe the complaint to allege that Lawson was engaged in pursuing her administrative EEO claim into at least the early part of 2007, shortly before she received the May 31, 2007, denial letter. So construed, Lawson has alleged the requisite temporal proximity between her protected activity and the FBI's May 31, 2007, refusal to reinstate her. *See, e.g.*, *Hamilton v. Geithner*, 666 F.3d 1344, 1358 (D.C. Cir. 2012) (holding that a two-month gap between the employee's protected activity and the employer's adverse action was sufficiently brief to support an inference of retaliation).

The Court recognizes that whether or not Lawson has alleged the requisite causal link is a closer question with respect to the final three denial letters, dated September 2, 2008, January 7, 2009, and March 26, 2010, respectively. The FBI issued these letters one to three years after Lawson's latest protected activity, and "[b]ecause of the time lapse, [Lawson] cannot rely solely on the time of [the denial letters] to show causation." *Forman v. Small*, 271 F.3d 285, 301 (D.C. Cir. 2001). However, Lawson offers more, and her additional assertion is the second reason that the Court concludes the complaint states a sufficient ADEA failure-to-hire retaliation claim.

Specifically, Lawson alleges that human resources personnel performed "an EEO database check to determine whether an applicant for [the] FBI SA [position] had prior EEO activity[.]" (Compl. ¶ 46.) This database check helps to bridge the one- to three-year gap between Lawson's 2006–2007 EEO activities and her subsequent employment applications, because, if true, such a check would have alerted the employees to Lawson's prior protected activity when they processed her 2008, 2009, and 2010 applications one to three years later. Moreover, this Court is hard-pressed to imagine

any *non*-retaliatory justification for such an "EEO database check" as part of a re-hire application review.  (*Id.*)  The Court notes further that there is nothing in Lawson's complaint regarding the FBI's application process that would render this allegation manifestly implausible.  In other words, if it is true that the FBI conducts "database check[s]" to determine whether applicants seeking to be reinstated to SA positions have engaged in prior EEO activity against the FBI, and as a result of this check, the FBI knew about Lawson's 2006–2007 EEO complaint when it processed—and denied—her 2008, 2009, and 2010 reinstatement applications, then Lawson's complaint plausibly suggests that her applications for reinstatement were denied because she engaged in protected activity.

Thus, although it presents a closer question, Defendants' dismissal contentions regarding causation as it pertains to Lawson's ADEA retaliation claims are rejected based on the Court's conclusion that Lawson's allegation regarding the FBI's EEO database check is sufficient to suggest a causal link between her protected activity and the challenged conduct.

     (iii) Lawson may amend her complaint to clarify what type of ADEA claim she intends to raise in Count I.

Finally, this Court must evaluate Defendants' dismissal arguments related to Count I, and in doing so, it has observed that, unlike the other ADEA failure-to-hire claims that are brought in the complaint, Lawson's complaint is unclear regarding the nature of the challenge that Lawson is making.  That is, at times, Count I appears to object to the FBI's reinstatement policy as discriminatory on its face (*see, e.g.*, Compl. ¶ 57, 58, 64, 67, 69 (making allegations that are in the nature of objections to the policy itself)), but other allegations in Count I suggest that Lawson's Count I challenge is, in

fact, a disparate treatment claim (*see, e.g.*, *id.* ¶ 65 (alleging that the FBI's

"discriminatory age-based policy was not applied to every over age 37 reinstatement

applicant who depleted the FERS pension account but was applied to disadvantage

Plaintiff because of her age")).  To make matters worse, Defendants perceive yet

another theory in the interstices of Count I's allegations of fact; they apparently read

this cause of action "to allege claims of disparate impact" as well as disparate

treatment.  (Defs.' Mot. at 8.)

Until this Court has a better understanding of the theory (or theories) of liability

that Lawson seeks to advance in Count I, it cannot undertake to analyze the sufficiency

of this claim.  The three aforementioned theories of liability (*i.e.*, a facial challenge to

the FBI's policy, a disparate treatment claim, or a disparate impact claim) represent

fundamentally different types of legal claims with different applicable standards.  *See,*

*e.g.*, *Ross v. Lockheed Martin Corp.*, No. 16-cv-2508, 2017 WL 3242237, at *2–3

(D.D.C. July 28, 2017) (describing the differences between disparate treatment and

disparate impact claims).  Therefore, Lawson will need to clarify the challenge she

intends to raise in this cause of action before the Court can adequately entertain

Defendants' arguments in support of dismissing Count I.  Accordingly, in the

accompanying Order, the Court permits Lawson to amend her complaint to clarify the

ground (or grounds) on which she seeks relief, and as a result, denies as moot

Defendants' current motion pertaining to dismissal of Court I.

**B.** **Defendants Have Not Demonstrated That Lawson's Complaint Fails To State A Title VII and ADEA Claim For Retaliatory Interference With The Administrative Processing Of Her EEO Complaint**

In addition to the various failure-to-hire claims discussed above, Lawson has also claimed unlawful retaliation, in violation of the ADEA (Count IV) and Title VII (Count VII), based on her former supervisor's alleged interference with, and improper processing of, Lawson's EEO complaint in 2010. (*See* Compl. ¶¶ 100–15; 141–55.) As Part I.B (*supra*) explains, Lawson maintains that Enriquez, the Chief of her former FBI Unit, "knew that [Lawson] filed an EEO complaint against him and other FBI employees in 2006" (*id.* ¶ 107), and that when she "participated in the formal discrimination complaint process in 2010" in connection with the FBI's failure to reinstate her as an SA (*id.*), Enriquez "appeared in" the office tasked with handling Lawson's complaint (*id.* ¶ 108), "supervised [Lawson]'s pending EEO case" (*id.*), and "intentionally interfered with [Lawson] in the pending EEO discrimination complaint process" (*id.* ¶ 109; *see also id.* ¶¶ 148–50). The complaint specifically asserts that Enriquez interfered with the processing of Lawson's 2010 EEO complaint by means of "improper complaint processing, approv[ing] the incomplete investigation of Plaintiff's claims of discrimination and retaliation, and approv[ing] the omission of any investigation of her claims of retaliation." (*Id.* ¶¶ 109, 150.) And Lawson asserts that these acts of intentional interference with the EEO-complaint process "establish retaliation in violation of [Title VII and] the ADEA." (*Id.* ¶ 113; *see also id.* ¶ 154.)

This Court concludes that Defendants have failed to demonstrate that Lawson's allegations are deficient in any manner that requires dismissal under Rule 12(b)(6). As discussed above, to state a claim for retaliation under Title VII and the ADEA, a plaintiff must plausibly allege that she "1) engaged in a statutorily protected activity;

[and] 2) suffered a materially adverse action by [her] employer; and that 3) a causal connection existed between the two." *Townsend*, 236 F. Supp. 3d at 315 (internal quotation marks and citation omitted). Defendants do not attack Lawson's retaliatory interference allegations by reference to any of these three elements; instead, Defendants' sole argument is that Lawson's allegations "are not actionable under Title VII or the ADEA" (Defs.' Mot at 21), because "Title VII and the ADEA create a cause of action for discrimination, not 'an independent cause of action for the mishandling of an employee's discrimination complaints'" (*id.* at 20 (quoting *Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 96 (D.D.C. 2011))). But Defendants' argument misperceives the retaliatory interference claims that Lawson makes in this complaint. It is true enough that the mishandling of an EEO complaint, *on its own*, does not give rise to an independent cause of action under Title VII or the ADEA. *See Douglas-Slade*, 793 F. Supp. 2d at 96 (dismissing Title VII claim because plaintiff had merely alleged "errors and irregularities with respect to the investigation of her discrimination claims at the administrative level"). But unlike the plaintiff in *Douglas-Slade*, Lawson alleges that a supervisor intentionally interfered with the processing of her EEO complaint *in retaliation* for prior protected activity. (*See* Compl. ¶¶ 109–10, 113–14, 150–51; 154.) In other words, Lawson has not alleged an independent cause of action for the improper processing of her EEO complaint, as Defendants suggest; rather, she has alleged a claim of retaliation, which is of course an actionable species of discrimination under both Title VII and the ADEA. *See* 42 U.S.C. § 2000e–3(a); *see also Gomez-Perez*, 553 U.S. at 479.

To the extent that Defendants' assertion that that Lawson's retaliatory interference allegations "are not actionable" (*see* Defs.' Mot at 21) is actually intended to argue that interference with the processing of an EEO complaint is not the sort of "materially adverse action" that can support a retaliation claim, *see Townsend*, 236 F. Supp. 3d at 315, this argument fares no better. It is well established that the anti-retaliation provisions of Title VII and the ADEA "extend[] beyond workplace-related or employment-related retaliatory acts and harm[,]" and encompass *any* retaliatory acts that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (internal quotation marks and citation omitted). The standard for identifying actionable adverse actions is objective, and it requires courts to "focus[] on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position" in order to identify "those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Id.* at 69–70; *see also id.* at 68.

This Court has no doubt that, when properly understood, the adverse action standard is satisfied under the circumstances presented in this case. Just as a reasonable employee might refrain from filing a discrimination complaint out of fear that a supervisor would retaliate by reassigning her to different duties or suspending her without pay, *see id.* at 70–73, so too might a reasonable employee refrain from engaging the EEO-complaint process out of a concern that a supervisor's interference with the EEO process would render her efforts futile. Thus, in both situations, the employer's conduct reasonably might "discourage an employee . . . from bringing [EEO] discrimination charges" that she otherwise would bring, *id.* at 70–71; *cf.*

*Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (holding that a jury could find that adverse action occurred where a supervisor increased the plaintiff's workload in order "to keep [her] too busy to file complaints").

Notably, although some prior decisions in this district have suggested that the improper processing of an administrative complaint cannot constitute a materially adverse action sufficient to sustain a claim of retaliation, *see Briscoe v. Kerry*, 111 F. Supp. 3d 46, 59 (D.D.C. 2015); *Diggs v. Potter*, 700 F. Supp. 2d 20, 46 (D.D.C. 2010), support for that proposition ultimately stems from *Keeley v. Small*, 391 F. Supp. 2d 30, 45 (D.D.C. 2005), which is a case that was decided *prior* to the view of the scope of actionable retaliation that the Supreme Court clarified in *Burlington Northern*. *See Diggs*, 700 F. Supp. 2d at 46 (relying on *Keeley* without addressing the Supreme Court's intervening decision in *Burlington Northern*); *see also Briscoe*, 111 F. Supp. 3d at 59 (relying on *Diggs*). In *Keeley*, the judge reasoned that complaints regarding interference with an EEOC investigation could not form the basis of a Title VII retaliation claim because an EEOC investigation does not relate to "a condition of employment[.]" 391 F. Supp. 2d at 45 (citation omitted). But the Supreme Court's 2006 *Burlington Northern* opinion spoke definitively to that issue, holding that the scope of "Title VII's substantive provision and its antiretaliation provision are not coterminous[,]" and the latter "is not limited to discriminatory actions that affect the terms and conditions of employment[,]" *id.*, 548 U.S. at 64, 67.

For the reasons explained above, and in light of *Burlington Northern*, this Court concludes that interference with the processing of an EEO complaint plausibly constitutes the sort of materially adverse action that can support a retaliation claim, and

thus Defendants' motion to dismiss Counts IV and VII on the grounds that such alleged retaliation is not actionable must be **DENIED**.

## IV.  CONCLUSION

This Court has carefully reviewed Lawson's complaint and the arguments that Defendants have raised in their motion to dismiss.  While Lawson has failed to exhaust her administrative remedies fully with respect to most of her failure-to-hire claims under Title VII, and it is far from clear that Lawson will ultimately be able to prove the remaining discrimination and retaliation claims she seeks to advance in this action, the Court finds that Lawson's complaint alleges sufficient facts to state a claim under the ADEA for discrimination and retaliation based on the agency's refusal to reinstate her. In addition, the Court concludes that Lawson's complaint states a claim for retaliation under the ADEA and Title VII based on Defendants' purported interference with the processing of her administrative complaint.  Finally, the Court will permit Lawson to amend her complaint in three limited respects:  first, Lawson may clarify the claim she intends to raise in Count I; second, she may plead the date that she purportedly received the right-to-sue letter that preceded the filing of the instant action; and third, she is permitted to supplement the factual allegations that support her surviving Title VII claims.  Accordingly, as set forth in the Order accompanying this Memorandum Opinion, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.


DATE:  September 22, 2017                    *Ketanji Brown Jackson*
                                            KETANJI BROWN JACKSON
                                            United States District Judge